UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

DONNIE F. TURNER )
)
V. ) NO. 2:12-CV-15
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Ms. Turner's applications for disability insurance benefits and supplemental security income under the Social Security Act were denied after administrative proceedings before an Administrative Law Judge ["ALJ"]. This action is one for judicial review of that decision. Plaintiff has filed a Motion for Judgment on the Pleadings [Doc. 14], and the defendant Commissioner has filed a Motion for Summary Judgment [Doc. 16].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues

differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Ms. Turner was 46 years of age, with a high school education and past relevant work as an LPN which was "very heavy" and unskilled vocationally, at the time of her hearing decision. She asserts a severe back impairment (degenerative disc disease) and severe depression. Plaintiff's Motion does not appear to challenge the findings of the ALJ relating to her mental impairment anywhere in the "law and argument" portion of her brief. There being no alleged error articulated in that regard, objections as to the ALJ's findings regarding her mental impairment are waived.

Plaintiff's medical history up to the time of the ALJ's decision on June 8, 2011, is adequately summarized in the Commissioner's brief as follows:

> In May 2008, Plaintiff visited ETSU Family Physicians with complaints of back pain with radiculopathy (Tr. 17, 257). At that time, Plaintiff showed a slightly drooped posture, decreased flexion, and tenderness in her lumbosacral joint (Tr. 257). Plaintiff received pain medication and her physicians encouraged her to do home exercises (Tr. 17, 257). Later, in August 2008, Plaintiff's treating physician opined that Plaintiff was "able to work" (Tr. 255). In May 2010, diagnostic testing of the lumbar spine showed only mild degenerative changes without acute findings (Tr. 275). In August 2010, diagnostic testing of the cervical spine showed no significant disc space or foraminal narrowing and no significant cervical spondylosis (Tr. 274). In March 2011, Dr. Douglas Rose, Plaintiff's treating physician, requested diagnostic testing of Plaintiff's lumbar, cervical, and thoracic spine that revealed no abnormalities or acute findings (Tr. 17, 299).
> On January 19, 2010, Dr. Krish Purswani conducted a consultative examination (Tr. 212). His physical examination of Plaintiff showed normal gait and station (Tr. 212). His examination of Plaintiff's back showed no scars, no obvious

2

> scoliosis, and normal range of motion to lateral flexions bilaterally (Tr. 212).
>
> Christopher W. Fletcher, M.D., a State agency medical consultant, examined the record and opined that Plaintiff could occasionally lift fifty pounds and frequently lift twenty-five pounds (Tr. 219). He opined that she could stand and/or walk about six hours in an eight-hour workday (Tr. 219). Dr. Fletcher further opined that Plaintiff could sit about six hours in an eight-hour workday and could push and pull without limitation (Tr. 219). In support of his opinion, Dr. Fletcher reviewed the record and found that it showed only mild to moderate degenerative disc disease (Tr. 225). He further found normal gait and station (Tr. 225). Dr. Fletcher also noted good range of motion in Plaintiff's back with the exception of extension (Tr. 225).

[Doc. 17, pgs. 2-3].

After the ALJ's decision, on August 17, 2011, plaintiff received more medical treatment relating to her back. This is summarized in the plaintiff's brief as follows:

> The claimant was sent to the ER by her family physician on 8/17/2011 due to severe low back pain. She was admitted. An MRI study showed a disc herniation on the left at L3-L4 and possible L4 nerve root being displaced. (TR 324) The study revealed mild to moderate right foraminal narrowing with possible irritation of the exiting right L5 nerve root. (TR 322) A small tear of the annulus fibrosis at L4-L5 was noted. (TR 324).

[Doc. 15, pg. 4].

At the administrative hearing, the ALJ and her counsel examined the plaintiff. The ALJ then called Ms. Donna Bardsley, a vocational expert ["VE"]. He asked Ms. Bardsley "to assume physically that the claimant is restricted to light work. Further assume that she requires a sit/stand option with alternating intervals of 30 minutes. Further assume that she is only able to maintain concentration and persistence for simple, routine, repetitive tasks and that she is only able to adapt to gradual and infrequent changes in a work setting." When asked if there were jobs available which the plaintiff could perform with those limitations, Ms. Bardsley identified jobs as a cashier, information clerk, hand packager and inspector. (Tr. 41-42). There is no dispute among the parties that the number of jobs identified constituted a substantial number of jobs under the regulations. The ALJ then asked Ms.

3

Bardsley to assume that the plaintiff's physical complaints set out in her testimony were "credible and that she is incapable of sustained work activity at any exertional levels for eight hours a day, forty hours a week." With those limitations, Ms. Bardsley opined there would be no jobs which plaintiff could perform. (Tr. 42).

In his hearing decision, the ALJ found that the plaintiff had the severe impairments of degenerative disc disease and depression (Tr. 14). He found that she had the residual functional capacity ["RFC"] as set forth in the question to vocational expert quoted above. (Tr. 16). He then described the medical opinions in great detail, particularly noting the radiological evidence in the record before him and that absence of "aggressive treatment." He discussed Dr. Purswani's examination and observations. He then stated that while plaintiff's "medically determinable complaints could reasonably be expected to cause the alleged symptoms...the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 17).

He then discussed his reasoning regarding the plaintiff's subjective complaints and his finding regarding her credibility. While her degenerative disc disease could reasonably be expected to produce some pain, he found that it would not be to the extent she alleged. He stated that the medical evidence showed she could sit, stand and walk and move about in a satisfactory manner. He also said he had reduced her RFC to include the sit/stand option with alternating intervals of 30 minutes to accommodate her condition. He pointed out that she had not required aggressive treatment, not been referred for pain management, and had not previously been hospitalized for back pain. He stated that no treating physician had

4

opined that she was "totally disabled due to pain."[1]  He stated that significant adverse side effects of medications were not indicated in her records.  He noted activities of cooking, washing dishes, sweeping, vacuuming, doing laundry and light cleaning and shopping in stores.  He noted "she made no statement of an inability to complete routine personal care needs."  He felt that "her statements and admissions related to ongoing activities do not support the claimant's self-limiting allegations."  In short, he felt that her back problems were severe, but the pain from those back problems would not prevent her functioning at the level of activity he found in the RFC. (Tr. 18).

He found that the State Agency physicians, who opined that the plaintiff could function at the medium level of exertion, supported his more restrictive RFC of a reduced range of light work.  He summed up his reasoning regarding the RFC and plaintiff's credibility by stating "that the evidence contained in the record does not support the claimant's allegations of totally incapacitating symptoms." (Tr. 18).

Based upon his RFC and the testimony of the VE, he found that a significant number of jobs existed which the plaintiff could perform and that she was not disabled. (Tr. 19-20).

Plaintiff's first argument is that the ALJ erred in his finding that there were jobs the plaintiff could perform with her residual functional capacity.  Actually, the argument is that the RFC ascribed to the plaintiff by the ALJ was simply wrong and not supported by substantial evidence.  The RFC found by the ALJ was that the plaintiff could perform only light work with the option to sit or stand at 30 minute intervals.

Plaintiff's primary contention is that the August 17, 2011 hospital admission and

---

[1] More importantly, no medical source, treating or otherwise, has submitted a functional capacity assessment opining that plaintiff cannot function at the RFC found by the ALJ.

5

findings at that time, over two months after the ALJ's decision, along with an MRI report from 2007, undermines the opinions of the consultative examiner Dr. Purswani and the state agency physician, Dr. Fletcher, because they did not have those records at the time they rendered their opinions. The records were submitted to the Appeals Council, which found that the information did not provide a basis for changing the ALJ's decision. (Tr. 2).

As stated by the Commissioner, evidence submitted to the Appeals Council may be considered only to determine whether the additional evidence satisfies the criteria for remand pursuant to sentence six of 42 U.S.C. § 405(g). To obtain such a remand, a plaintiff must show that the evidence is "new and material" and that there was good cause for not presenting the evidence to the ALJ. *Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996).

With respect to the 2007 MRI report (Tr. 323-24), there is certainly no reason why the plaintiff could not have submitted that record to the Commissioner for consideration. Obviously, the August 2011 medical records are in a different posture. However, after reviewing both the 2007 and 2011 reports, the Court agrees with the Appeals Council that there is not "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence."

The plaintiff's hospitalization on August 17, 2011, was certainly the most serious medically documented episode she has had with her back. This case is factually similar to *Wyatt v. Secretary of Health and Human Services* 974 F.2d 680 (6th Cir. 1992). In that case, the plaintiff who was seeking disability due in part to heart problems, submitted evidence of a post-decision heart attack to the Appeals Council. The Court held that this evidence was not material as to the plaintiff's condition during the relevant time period before the ALJ

6

rendered his decision. In *Wyatt*, the report regarding the heart attack was dated four months after the administrative hearing and one month after the ALJ's decision. The Court therefore held "this new evidence was irrelevant and cannot justify a remand." *Id.*, at 685).

Also, the Court shares the pessimism of the Appeals Council that even if the ALJ had considered the 2007 MRI report and the August, 2011 hospital records he would have been compelled to render a different decision. The 2007 MRI apparently served as a basis to contrast imaging studies performed during the August 2011 hospitalization. The report of the 2007 MRI of the plaintiff's lumbar spine states:

> Vertebral body height and alignment are normal. There are no unusual vertebral signals. The L4-L5 and L5-S1 disc spaces are narrom and desiccated. There is diffuse annular bulge at L4-L5. A small tear is seen posteriorly in the midline and annulus fibrosis at this level, but no disc herniation is seen. There is no disc herniation at L5-S1. Disc protrusion is seen on the left at L3-L4 involving the neural foramen and lateral recess. The left L4 nerve root is mildly displaced. There is no L3 nerve root compression or evidence of significant narrowing of the neural foramen. No foraminal stenosis is seen elsewhere. The spinal canal is of normal dimensions throughout the lumbar region. The conus medullaris is unremarkable. No facet disease is appreciated.
>
> Impression:
> Degenerative Disc Disease
> Disc herniation on the left at L3-L4. Clinical correlation for L4 radiculopathy is advised.

(Tr. 323-24).

The MRI taken on August 17, 2011 by Wellmont Health System showed, with respect to *every aspect of the plaintiff's lumbar spine*, either "no significant change" or "no change" since the 2007 imaging studies (Tr. 322). Plaintiff's disability onset date was December 1, 2008. From the perspective of the MRI's, there was no observable change between her pre-disability onset date MRI in 2007 and the one in 2011.

Plaintiff's second argument is that the ALJ erred in his assessment of the plaintiff's

7

credibility. The ALJ is the trier of fact, and is given great latitude in weighing the evidence and credibility of witnesses. He did not find the plaintiff to be entirely credible in her description of the effects of her back condition on her activities. However, he adequately explained his finding in this regard, and gave her considerable benefit of the doubt in arriving at her RFC for a limited range of light work when the there was other evidence suggesting that she could do at least a limited range of medium work, and no medical opinion that she could *not* perform a limited range of medium work. He correctly noted her lack of aggressive treatment up to that point, and took into account her daily activities which, limited as they are, do not suggest that the plaintiff is an invalid incapable of any substantial gainful activity.

The Court finds that there is substantial evidence to support the ALJ's RFC finding and the question to the vocational expert. The Court also finds that the ALJ properly evaluated the plaintiff's credibility in his role as trier of fact. Accordingly, it is respectfully recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 14] be DENIED, and that the defendant Commissioner's Motion for Summary Judgment [Doc. 16] be GRANTED.[2]

Respectfully submitted,

s/ Dennis H. Inman
United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).